UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| DENTON WATSON, | : | |
|---|---|---|
| Petitioner, | : | Civ. No. 17-0595 (KM) |
| v. | : | |
| CHARLES GREEN, | : | OPINION |
| Respondent. | : | |

**KEVIN MCNULTY, U.S.D.J.**

## I.  INTRODUCTION

The petitioner, Denton Watson, is an immigration detainee currently lodged at the Essex County Correctional Facility in Newark, New Jersey. He is proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Mr. Watson challenges his current immigration detention in this habeas petition. For the following reasons, the habeas petition will be granted and a bond hearing will be ordered to take place before an Immigration Judge ("IJ") within fourteen days.

## II.  BACKGROUND

Mr. Watson is a native and citizen of Jamaica. He entered the United States in 1983. Mr. Watson was convicted of several drug offenses, the first of which occurred in 1989.

On July 8, 2016, Mr. Watson was placed into immigration detention. On August 3, 2016, Mr. Watson requested a continuance of his removal proceedings before an IJ so that he could obtain counsel. At another hearing before an IJ on September 7, 2016, Mr. Watson, who now had counsel to represent him, requested another continuance. On October 26, 2016, the master

---

[1] Mr. Watson filed his habeas petition *pro se*. However, counsel has now entered an appearance and also filed a reply brief on his behalf.

calendar hearing was adjourned by the IJ to the individual calendar for a merits hearing. On January 10, 2017, Mr. Watson appeared for his individual merits hearing. On February 27, 2017, an IJ ordered Mr. Watson removed from the United States.

Mr. Watson appealed the IJ's removal order to the Board of Immigration Appeals ("BIA"). Mr. Watson indicates in his reply brief that the matter remains pending before the BIA. (*See* Dkt. No. 8 at p.6)

In January, 2017, Mr. Watson filed his habeas petition. Respondent filed a response in opposition to the habeas petition. Thereafter, Mr. Watson filed a reply brief in support of his habeas petition.

### III. DISCUSSION

Mr. Watson has appealed the IJ's order to the BIA, and for so long as that appeal remains pending, his order of removal is not final. *See* 8 C.F.R. 1241.1(a) (order of removal by IJ becomes final upon dismissal of appeal by the BIA). The Attorney General has the authority to detain aliens in removal proceedings before the issuance of a final order of removal. This period of detention is known as the "pre-removal" period. Detention of an alien in the pre-removal period is governed by Section 1226 of Title 8 of the United States Code. Section 1226(a) permits the Attorney General to detain or release an alien pending a decision on whether the alien is to be removed from the United States:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General;
> (B) conditional parole; ...

2

8 U.S.C. § 1226(a). "Except as provided in subsection (c)" is included because, under Section 1226(c), certain criminal aliens are subject to mandatory pre-removal detention:

> The Attorney General shall take into custody any alien who—
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(a)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
> when the alien is released, without regard to whether the alien is release on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1).

In *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), the United States Court of Appeals for the Third Circuit established a framework for analyzing the permissibility of pre-removal detention:

> [Title 8, United States Code, Section] 1226(c) contains an implicit limitation on reasonableness: the statute authorizes only mandatory detention that is reasonable in length. After that, § 1226(c) yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose.... Should the length of [an alien's] detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof.

656 F.3d at 235. *Diop* did not state a specific length of pre-removal-order detention beyond which a petitioner would be entitled to a bond hearing. *See id.* at 234; *see also Carter v. Aviles*, No. 13-3607, 2014 WL 348257, at *3 (D.N.J. Jan. 30, 2014) ("[T]he Third Circuit has not set a 'universal point' when mandatory detention under § 1226(c) is unreasonable.") (citing *Leslie v.*

*Attorney Gen.*, 678 F.3d 265, 270–71 (3d Cir.2012)); *Barcelona v. Napolitano*, No. 12–7494, 2013 WL 6188478, at *1 (D.N.J. Nov. 26, 2013) ("The Court of Appeals in *Diop* declined to adopt a rule that a hearing was required after a certain fixed amount of time in pre-removal detention.") (citation omitted). Instead, the Third Circuit noted that "[r]easonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of a particular case." *Diop*, 656 F.3d at 234. A reasonableness determination "must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case." *Id.* However, "'the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds.'" *Chavez–Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 474 (3d Cir. 2015) (quoting *Diop*, 656 F.3d at 232, 234). Indeed, in *Chavez–Alvarez*, the Third Circuit noted with respect to the circumstances of that particular case that sometime after six months, and certainly within a year, the burden to the petitioner's liberties would outweigh any justification to detain the petitioner without a bond hearing. *See id.* at 478. A petitioner's bad faith, too, has at least the potential to influence the determination of whether a bond hearing should be ordered. *See Chavez-Alvarez*, 783 F.3d at 476 ("Because we conclude that Chavez-Alvarez did not act in bad faith, we do not need to decide here whether an alien's delay tactics should preclude a bond hearing.").

A. <u>Reasonableness of Immigration Detention</u>

Mr. Watson has been in immigration detention for over nine months. As indicated above, in *Chavez-Alvarez*, the Third Circuit noted that sometime after six months, and almost certainly after a year, the burden to the petitioner's liberties would outweigh any justification to detain the petitioner without a bond hearing. Respondent nevertheless argues that a hearing should be denied for two reasons. First, "*all* the delay in Mr. Watson's proceedings to date is attributable to

*his* requests for continuances and *his* non-readiness to complete his hearing on his claim for protection from removal to his home country on the scheduled date of July 26, 2016." (Dkt. No. 4 at p.17) (emphasis in original). Second, he has not raised a bona fide challenge to his removal.

To say that Mr. Watson is responsible for "*all*" of the delay is an unacceptable exaggeration of the kind that trained counsel should avoid. To be sure, Mr. Watson did obtain continuances during the proceedings before the IJ. Other delays, however, are not attributable to him. For example, respondent states that the IJ listed the matter for a merits hearing on October 26, 2016, but the hearing did not take place until January 10, 2017. It was not until a month and a half after that merits hearing, on February 27, 2017, that Mr. Watson received a decision. Mr. Watson is not rresponsible for this period of time. Additionally, Mr. Watson's appeal is now pending before the BIA. A date when the BIA will rule on this appeal is unknown.

Thus, the claim of government counsel that Mr. Watson is responsible for "all" of the delay in this case is unfounded. Aside from putting the Court to the unacceptable burden of sorting out this exaggerated claim, counsel has weakened the government's position, which would be an arguable one, based on the actual facts.

That Mr. Watson is *partly* responsible for the delay in his immigration proceedings is not dispositive. In *Chavez-Alvarez*, the Third Circuit explained that "[t]he primary point of reference for justifying the alien's confinement must be whether the civil detention is necessary to achieve the statute's goals: ensuring participation in the removal process, and protecting the community from the danger that he or she poses." 783 F.3d at 475. Thus, "detention can become unreasonable, and a petitioner can be entitled to a bond hearing, even where the Government itself acted reasonably and is not reasonable for the delays in the conclusion of an alien's immigration proceedings." *Rodriguez v. Green*, No. 16-4431, 2016 WL 7175597, at *2 (D.N.J.

Dec. 7, 2016). Of course, that is not license for detainees to proceed in bad faith as "aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." *Chavez-Alvarez*, 783 F.3d at 476 (footnote omitted). A detainee's good or bad faith, however, is not a matter of counting days or tallying rulings, but requires an assessment of circumstances. The detainee's good or bad faith requires an assessment of the circumstances:

> The issue of good faith is necessarily decided on the individual circumstances, but the analysis is more complex than the method posed by the Government: counting wins and losses. The most important consideration for us is whether an alien challenges aspects of the Government's case that present real issues, for example: a genuine factual dispute; poor legal reasoning; reliance on a contested legal theory; or the presence of a new legal issue. Where questions are legitimately raised . . . we cannot "effectively punish" these aliens for choosing to exercise their legal right to challenge the Government's case against them by rendering "the corresponding increase in time of detention [as] reasonable."

*Chavez-Alvarez*, 783 F.3d at 476 (citation omitted).

Mr. Watson has now been in immigration detention for over nine months. Nothing about the circumstances under which he sought and obtained continuances of his immigration proceedings suggests bad faith. For the most part, he merely sought to, and did, obtain counsel. That, without more, does not disentitle him to a bond hearing.

Respondent also contests the bona fides of Mr. Watson's claims of non-removability. But that is what an appeal to the BIA is for. It is true that an IJ has now denied Mr. Watson's claims for relief. That, without more, does not establish that he acted in bad faith. *See, e.g., Peinado v. Green*, No. 16-5325, 2016 WL 7104890, at *2 (D.N.J. Dec. 6, 2016) (citing *Chavez-Alvarez* and noting that "The fact that the IJ sustained the removal order and denied relief does not establish that Petitioner's requests for relief from removal are nothing more than a bad faith attempt to delay proceedings.")

In light of the length of time Mr. Watson has been in immigration detention and a lack of evidence of bad faith, I find that that Mr. Watson is entitled to relief.

B. Type of Relief

Mr. Watson requests immediate release from immigration detention. However, in the pre-removal context under *Diop* and *Chavez-Alvarez*, the proper relief is not to release the petitioner, but to order a bond hearing. *See Morrison v. Elwood*, No. 12-4649, 2013 WL 323340, at *1 (D.N.J. Jan. 28, 2013) ("This Court's power to entertain habeas applications ensues rom the narrowly-tailored mandate of 28 U.S.C. § 2241, which – with respect to the claims raised by pre-removal order detainees – allows relief limited to a directive of a bond hearing.") (citing *Diop*, 656 F.3d at 221).

The Respondent argues that what is required is not a bond hearing before an IJ, but a new initial custody determination by a deportation officer.[2] The premise of this argument seems to be that, once a § 1226(c) pre-removal detention is found to be unreasonable, it should be judicially converted to a § 1226(a) detention. Courts within this Circuit, disagreeing, have found that the proper relief under *Diop/Chavez-Alvarez* is to order a bond hearing before an IJ in the first instance. *See, e.g., Rodriguez*, 2016 WL 7175597, at *3 (granting habeas relief and directing IJ to provide petitioner with a bond hearing); *Javier v. Lowe*, No. 16-0561, 2016 WL 1569941, at *3-4 (M.D. Pa. Apr. 18, 2016) (collecting cases and holding that initial bail determinations in the

---

[2] In support of this argument, respondent cites *Gordon v. Johnson*, 300 F.R.D. 31 (D. Mass. 2014). Respondent's citation does not note that *Gordon* was vacated on November 21, 2016, some four months prior to the filing of its brief in this case. *See Gordon v. Lynch*, 842 F.3d 66 (1st Cir. 2016). This is unacceptable. Even the vacated *Gordon* district court decision, however, would not apply. It rests on the doctrine, rejected by the Third Circuit, that immigration detention is unreasonable unless it commences within forty-eight hours of release from the relevant predicate custody. *See Gordon*, 300 F.R.D. at 35. Third Circuit law does not require that the government immediately place the petitioner into immigration detention when he is released from criminal custody. *See Sylvain v. Attorney General*, 714 F.3d 150 (3d Cir. 2013).

7

*Chavez-Alvarez* context should be made by the IJ in the first instance), *report and recommendation adopted by* 2016 WL 1569942 (M.D. Pa. Apr. 19, 2016). I will order such relief here.

## IV. CONCLUSION

For the foregoing reasons, I will grant Mr. Watson's petition for writ of habeas corpus to the extent that I will direct an IJ to provide him with a bond hearing within fourteen days. The respondent shall report the result of the bond hearing to this Court within seven days thereafter.

I am cognizant of the enormous caseload faced by conscientious government attorneys. I must nevertheless observe that it is not acceptable to exaggerate the facts or to cite vacated authority without identifying it as such.

An appropriate order will be entered.

Dated: April 26, 2017

KEVIN MCNULTY
United States District Judge